Buesing, Hernacki & Beckstead, P.L.L.C
James P. Buesing (Bar No. 022404)
111 West Monroe Street, Suite 320
Phoenix, Arizona 85003
602-388-8645 (P)
602-218-4450 (F)
James@BHBFirm.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| ROBERTO CARRILLO GONZALES,<br><br>**Plaintiff,**<br><br>v.<br><br>CITY OF PHOENIX, a political subdivision of the State of Arizona; PHOENIX POLICE DEPARTMENT; JOE YAHNER, Police Chief for PHOENIX POLICE DEPARTMENT (only in his official capacity and not individually); IRA WALLACE, individually and in his official capacity as a PHOENIX POLICE DEPARTMENT Officer; MICHAEL GEORGE, individually and in his official capacity as a PHOENIX POLICE DEPARTMENT Officer; JUSTIN MULLEN, individually and in his official capacity as a PHOENIX POLICE DEPARTMENT Officer; DOUGLAS MICHAUD, individually and in his official capacity as a PHOENIX POLICE DEPARTMENT Officer; SERGEANT AURELIUS, individually and in his official capacity as a PHOENIX DEPARTMENT Sergeant; JANE DOES I through X, inclusive; JOHN DOES I through X inclusive; and ROE CORPORATIONS I through X, inclusive.<br><br>**Defendants.** | Civil Action No.: to be assigned by the Clerk of the Court<br><br>COMPLAINT<br><br>(Jury Trial Requested) |

-1-

Plaintiff, ROBERTO CARRILLO GONZALES for his Complaint against Defendants, hereby pleads and alleges as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, ROBERTO CARRILLO GONZALES (hereinafter referred to as "GONZALES") is, and at all relevant times was, a resident of Maricopa County, Arizona.

2. Defendant, CITY OF PHOENIX (hereinafter referred to as "Defendant PHOENIX"), is, and was at times material hereto, a municipality organized under the laws of Arizona and/or a political subdivision of the State of Arizona.

3. Defendant, PHOENIX POLICE DEPARTMENT (hereinafter referred to as "Defendant PPD"), is and at all times mentioned in this Complaint was a subdivision of the State of Arizona and/or Defendant PHOENIX.

4. Defendant, JOE YAHNER (hereinafter referred to as "Defendant YAHNER"), is and at all times mentioned in this Complaint was the Chief of Police for Defendant PPD.

5. Defendant, IRA WALLACE (hereinafter referred to as "Defendant WALLACE"), is and at all times mentioned in this Complaint was a City of Phoenix Police Officer. He is named in this complaint both in his individual and official capacity as an officer for the City of Phoenix and the PPD. At all material times, Defendant WALLACE was married to JANE DOE WALLACE.

6. At all material times, Defendant WALLACE was acting for and on behalf of the marital community comprised of himself and Jane Doe WALLACE. Jane Doe WALLACE is named as a defendant solely to comply with the community property laws of the State of Arizona.

7.      Defendant, MICHAEL GEORGE (hereinafter referred to as "Defendant GEORGE"), is and at all times mentioned in this Complaint was a City of Phoenix Police Officer. He is named in this complaint both in his individual and official capacity as an officer for the City of Phoenix and the PPD. At all material times, Defendant GEORGE was married to JANE DOE GEORGE.

8.      At all material times, Defendant GEORGE was acting for and on behalf of the marital community comprised of himself and Jane Doe GEORGE. Jane Doe GEORGE is named as a defendant solely to comply with the community property laws of the State of Arizona.

9.      Defendant, JUSTIN MULLEN (hereinafter referred to as "Defendant MULLEN"), is and at all times mentioned in this Complaint was a City of Phoenix Police Officer. He is named in this complaint both in his individual and official capacity as an officer for the City of Phoenix and the PPD. At all material times, Defendant MULLEN was married to JANE DOE MULLEN.

10.     At all material times, Defendant MULLEN was acting for and on behalf of the marital community comprised of himself and Jane Doe MULLEN. Jane Doe MULLEN is named as a defendant solely to comply with the community property laws of the State of Arizona.

11.     Defendant, DOUGLAS MICHAUD (hereinafter referred to as "Defendant MICHAUD"), is and at all times mentioned in this Complaint was a City of Phoenix Police Officer. He is named in this complaint both in his individual and official capacity as an officer for the City of Phoenix and the PPD. At all material times, Defendant MICHAUD was married to JANE DOE MICHAUD.

12. At all material times, Defendant MICHAUD was acting for and on behalf of the marital community comprised of himself and Jane Doe MICHAUD. Jane Doe MICHAUD is named as a defendant solely to comply with the community property laws of the State of Arizona.

13. Defendant, SERGEANT AURELIUS (hereinafter referred to as "Defendant AURELIUS"), is and at all times mentioned in this Complaint was a City of PHOENIX Police Officer. He is named in this complaint both in his individual and official capacity as an officer for the City of Phoenix and the PPD. At all material times, Defendant AURELIUS was married to JANE DOE AURELIUS.

14. At all material times, Defendant AURELIUS was acting for and on behalf of the marital community comprised of himself and Jane Doe AURELIUS. Jane Doe AURELIUS is named as a defendant solely to comply with the community property laws of the State of Arizona.

15. Pursuant to A.R.S. Section 12-821.01, a Notice of Claim was timely filed and served.

16. That the true names in capacities whether individual, corporate, associate, or otherwise, of defendant JANE DOES and JOHN DOES I through X and/or ROE CORPORATIONS I through X, inclusive, are unknown to the Plaintiff, who therefore sues said defendants for such fictitious names. Plaintiff is informed, and believes and therefore alleges that each of the defendants designated herein as a DOE and/or ROE CORPORATION are responsible in some manner for the events and happenings herein referred to, and in some manner proximately caused the injuries and damages to the Plaintiff as herein alleged; the Plaintiff will seek leave of this Court to amend this Complaint to insert the true names and

capacitates of said defendants, DOES I through X, inclusive, and/or ROE CORPORATIONS I through X, inclusive, when the same have been ascertained by Plaintiff together with the appropriate charging allegations, and to join such defendants in this action.

17. That at all times herein mentioned, JANE and JOHN DOES I through X, inclusive, and/or ROE CORPORATIONS, I through X, inclusive were agents, servants, subsidiaries and/or employees, of the defendants, and each of them were acting within the course and scope of their agency, employment or contract.

18. All acts, transactions, events and occurrences relevant hereto took place within Maricopa County, Arizona.

19. Defendant WALLACE, at all relevant times, was acting within the course and scope of his employment, and his actual, apparent, and/or ostensible agency with the City of Phoenix and PPD.

20. Defendant GEORGE, at all relevant times, was acting within the course and scope of his employment and his actual, apparent, and/or ostensible agency with the City of Phoenix and PPD.

21. Defendant MULLEN, at all relevant times was acting within the course and scope of his employment, and his actual, apparent, and/or ostensible agency with the City of Phoenix and PPD.

22. Defendant MICHAUD, at all relevant times was acting within the course and scope of his employment, and his actual, apparent, and/or ostensible agency with the City of Phoenix and PPD.

23. Defendant AURELIUS, at all relevant times was acting within the course and scope of his employment, and his actual, apparent, and/or ostensible agency with the City of Phoenix and PPD.

24. Defendant CITY OF PHOENIX was acting through its agents and employees, including, but not limited to Defendants WALLACE, GEORGE, MULLEN, MICHAUD, AURELIUS and PPD, at all material times. Defendant CITY OF PHOENIX is vicariously liable for the acts of its employees and agents.

## **GENERAL ALLEGATIONS**

25. On or November 26, 2010, Plaintiff GONZALES was operating his motor vehicle, a truck, within the City of Phoenix with four passengers.

26. Plaintiff GONZALES was driving, his wife, Alicia Govea, and two infant children were in the cab of the truck and Plaintiff GONZALES' son, also named Robert Lopez, was riding in the bed of the truck.

27. On said date, members of Defendant PPD began surveilling Plaintiff GONZALES because he was "of interest" for a traffic stop.

28. Plaintiff GONZALES, while being followed by Defendants WALLACE and GEORGE in a marked Phoenix Police vehicle, parked in a parking space in the parking lot of Encanto Park, a public park in Phoenix, Arizona.

29. After Plaintiff GONZALES parked, Defendant WALLACE and GEORGE pulled up behind Plaintiff GONZALES and conducted a traffic stop, with their guns drawn, for the Phoenix City Code Violation of having a person in the bed of the truck, Phoenix City Code 36-67: Defendant WALLACE contacting the driver, Plaintiff GONZALES, and Defendant GEORGE contacting the passengers.

30. During the traffic stop Defendants MULLEN, MICHAUD, and AURELIUS arrived at various points during the event to assist.

31. Also in the parking lot of Encanto Park, there were numerous civilian witnesses who were, as the Gonzaleses were, attending the 75th Anniversary Diamond Jubilee taking place at Encanto Park.

32. Initially, Plaintiff GONZALES was seated in the driver's seat of his truck and provided his identification to Defendant WALLACE.

33. Defendant WALLACE spoke aggressively from the outset of the traffic stop towards Plaintiff GONZALES.

34. Defendant GEORGE took on the responsibility of writing the civil traffic citation for one count of "Portion not intended for passenger".

35. During the stop Defendant WALLACE obtained information from his Mobile Data Terminal indicating that Plaintiff GONZALES had been associated with some type of gang activity in the past.

36. Due to the amount of time that it was taking officers to write the citation, etc., and because of the heat and his arthritis, Mr. Gonzales requested they, he and his family, be allowed to wait outside of the truck. He was given permission by Defendant GEORGE to sit on the tailgate of his truck.

37. Once outside of his truck, Defendants WALLACE and MICHAUD continued to aggressively speak to Plaintiff GONZALES regarding his supposed gang affiliations and tattoos, requesting that they be able to take pictures of Plaintiff GONZALES with his shirt off.

38. Plaintiff GONZALES objected to pictures being taken of him and was told by Defendant WALLACE that he, Defendant WALLACE, could take photographs of whom ever (expletives omitted) he wanted.

39. Because he was holding one of the infants at the time, Plaintiff GONZALES handed the child to his wife so that pictures could be taken of him without the child.

40. Once the child was handed away Plaintiff GONZALES was grabbed by Defendant WALLACE, lifted off of the tailgate of the truck and slammed face-down to the pavement.

41. Plaintiff GONZALES immediately began screaming because of the pain caused by being slammed to the ground, particularly in his left shoulder.

42. As Plaintiff GONZALES lay face-down on the pavement Defendants WALLACE and MICHAUD pulled Plaintiff GONZALES' hands behind his back, handcuffed him, arresting him, and then pulled him up off the ground using Plaintiff GONZALES' restrained arms, despite his complaint of extreme pain.

43. Defendants AURELIUS and MULLEN stood by as support to Defendants WALLACE, MICHAUD and GEORGE, to help with the crowd of people (civilians) who had begun to gather.

44. Civilians present noted that the Defendants were acting aggressively, using profanities towards not only Plaintiff GONZALES and his family, but also to the gathering crowd who were voicing opinions about how Plaintiff GONZALES was being treated.

45. Plaintiff GONZALES plead with Defendants to be seen by paramedics. Once paramedics arrived, Defendants were advised that Mr. Gonzales would need to be taken to the hospital.

46. At the Maricopa Medical Center, Plaintiff GONZALES was diagnosed with a broken left clavicle bone.

47. Alicia Gonzales attempted to visit Plaintiff GONZALES at the hospital, but was approached by Defendant WALLACE in the waiting area and told by Defendant WALLACE, using profanities and name-calling, that what was happening to Mr. Gonzales was none of her business and escorted her out of the hospital, threatening her with arrest.

48. Once released from the hospital, as he was still under arrest, Plaintiff GONZALES was taken to jail and cited with a citation in the City of Phoenix Municipal Court for a city code violation of Phoenix City Code 36-67, and charges for felony Resisting Arrest and misdemeanor Obstructing Government Operations (hereafter Obstruction charges) were submitted to Maricopa County Superior Court by Defendant WALLACE.

49. Plaintiff GONZALES spent a night in jail before no probable cause was found for the Resisting Arrest and Obstruction charges and was released.

50. The Obstruction charges were later filed by the Phoenix City Prosecutor's Office and later dismissed.

51. Once released from jail, due to his extreme pain, Plaintiff GONZALES went to Banner Estrella Hospital for further treatment.

52. Mr. Gonzales sought further medical treatment in the months following because he had previously suffered from arthritis, but his pain and discomfort were compounded exponentially by the injuries suffered at the hands of the Defendants.

53. In the weeks following his injury Mr. Gonzales was unable to use his left arm, and his upper body, without great discomfort, which impacted many aspects of his everyday life.

54. Surgery was considered to aid in relieving the pain and physical problems caused by the incident, but the consideration was negated due to Mr. Gonzales' arthritis.

55. As such, Mr. Gonzales may have to endure the physical pain and discomfort from his injuries for the foreseeable future.

**FIRST CLAIM FOR RELIEF**

**(Breach of Assault)**

56. Plaintiff incorporate the allegations contained in paragraphs 1 through 55 of the Complaint and realleges the same as though fully set forth hereinafter.

57. This cause of action is brought pursuant to all applicable state and feral statutory and common law.

58. On or about November 27, 2010, Defendants assaulted Plaintiff GONZALES by intentionally placing him in apprehension of immediate harmful or offensive contact, by slamming him to the ground, and by otherwise physically harming him as described above.

59. Defendants caused apprehension of an immediate harmful or offensive contact with Plaintiff GONZALES.

60. Defendants' conduct was without excuse or provocation.

61. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress and harm, such damages to be determined by a jury.

**SECOND CLAIM FOR RELIEF**

**(Wrongful Arrest)**

62. Plaintiff incorporate the allegations contained in paragraphs 1 through 61 of the Complaint and realleges the same as though fully set forth hereinafter.

63. This cause of action is brought pursuant to all applicable state and federal statutory and common law.

64. Upon information and belief, on or about November 27, 2010, Defendants arrested Plaintiff GONZALES for Resisting Arrest and Obstructing Government Action.

65. Defendants had no probable cause to arrest Plaintiff GONZALES as there is no indication that he either obstructed government actions or resisted arrest.

66. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress, such damages to be determined by a jury.

## **THIRD CLAIM FOR RELIEF**

### **(Excessive Force)**

67. Plaintiff incorporate the allegations contained in paragraphs 1 through 66 of the Complaint and realleges the same as though fully set forth hereinafter.

68. This cause of action is brought pursuant to all applicable state and federal statutory and common law.

69. Upon information and belief, on or about November 27, 2010, Defendants arrested Plaintiff GONZALES for Resisting Arrest and Obstructing Government Action.

70. Defendants used unreasonable and unnecessary force to affect such arrest by using profanities, threatening, and lifting and slamming Plaintiff GONZALES with reckless disregard for Plaintiff GONZALES' right to bodily integrity.

71. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress, such damages to be determined by a jury.

## FOURTH CLAIM FOR RELIEF

### (42 U.S.C. Section 1983)

72. Plaintiff hereby incorporates the allegations of paragraphs 1 through 71 as though fully set forth herein

73. This cause of action is brought pursuant to all applicable federal and state statutory and common law.

74. On or about November 27, 2010, Defendants, acting under the color of state law, deprived Plaintiff GONZALES of his rights, privileges, and immunities secured or protected by the Constitution and laws of the United State and Arizona and in violation of 42 U.S.C. Section 1983. Defendants' use of threats and force upon Plaintiff GONZALES was excessive, unprovoked and unwarranted. The Defendants violated Plaintiff GONZALES' constitutional rights, including, but not limited to, his right to be free from excessive force, and his right to liberty.

75. Defendants CITY OF PHOENIX, PPD, and Chief of Police YAHNER manifested deliberate indifference in their hiring, training, and supervision of Defendants WALLACE, MICHAUD, GEORGE, AURELIUS and MULLEN, in further violation of the Due Process Clause of the United States Constitution.

76. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress and harm, such damages to be determined by a jury.

## FIFTH CLAIM FOR RELIEF

### (42 U.S.C. Section 1981)

77. Plaintiff hereby incorporates the allegations of paragraphs 1 through 77 as though fully set forth herein

78. This action is brought pursuant to all applicable federal and state statutory and common law.

79. On or about November 27, 2010, Defendants deprived Plaintiff GONZALES of his right to the full and equal benefit of all laws and proceedings for the security of person and property as enjoyed by citizens in violation of 42 U.S.C. Section 1981.

80. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress and harm, such damages to be determined by a jury.

## SIXTH CLAIM FOR RELIEF

### (Negligence)

81. Plaintiff hereby incorporates the allegations of paragraphs 1 through 80 as though fully set forth herein

82. This action is brought pursuant to all applicable federal and state statutory and common law.

83. Defendants CITY OF PHOENIX, PPD, and YAHNER negligently hired, trained, supervised, and monitored Defendants WALLACE, MICHAUD, GEORGE, AURELIUS and MULLEN. The Defendant governmental entities are responsible for the actions of Defendants WALLACE, MICHAUD, GEORGE, AURELIUS and MULLEN and their other agents and employees.

84. Defendants WALLACE, MICHAUD, GEORGE, AURELIUS and MULLEN's reckless, careless, and negligent acts were as a direct result of their employment with Defendants Phoenix, PPD, and YAHNER.

85. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress and harm, such damages to be determined by a jury.

## SEVENTH CLAIM FOR RELIEF

### (Intentional Infliction of Emotional Distress)

86. Plaintiff hereby incorporates the allegations of paragraphs 1 through 85 as though fully set forth herein

87. This action is brought pursuant to all applicable federal and state statutory and common law.

88. On or about November 27, 2010, and since that date, Defendants intentionally and/or recklessly caused emotional distress to Plaintiff GONZALES.

89. Defendants' conduct was extreme and outrageous.

90. Defendants' conduct was intentional and/or reckless.

91. Defendants intended to cause emotional distress or recklessly disregarded the near certainty that emotional distress would result from their conduct.

92. Defendants' extreme and outrageous conduct caused Plaintiff GONZALES to suffer severe emotional distress.

93. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress and harm, such damages to be determined by a jury.

# EIGHTH CLAIM FOR RELIEF

## (Negligent Infliction of Emotional Distress)

94. Plaintiff hereby incorporates the allegations of paragraphs 1 through 93 as though fully set forth herein

95. This action is brought pursuant to all applicable federal and state statutory and common law.

96. On or about November 27, 2010, and since that date, Defendants' reckless, careless, and negligent acts created an unreasonable risk of bodily harm to Plaintiff GONZALES.

97. Defendants' reckless, careless and negligent acts were a cause of emotional distress to Plaintiff GONZALES.

98. Plaintiff GONZALES' emotional distress resulted in physical injury or distress to Plaintiff GONZALES.

99. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress and harm, such damages to be determined by a jury.

# NINTH CLAIM FOR RELIEF

## (Battery)

100. Plaintiff hereby incorporates the allegations of paragraphs 1 through 99 as though fully set forth herein

101. This action is brought pursuant to all applicable federal and state statutory and common law.

102. On or about November 27, 2010, Defendants battered Plaintiff GONZALES by intentionally causing harm or offensive contact with Plaintiff GONZALES.

103. As a direct and proximate result of Defendants' conduct as described above, Plaintiff GONZALES suffered physical injury and great emotional distress and harm, such damages to be determined by a jury.

### REQUEST FOR A JURY TRIAL

104. Plaintiff respectfully requests a jury trial.

**WHEREFORE,** Plaintiff GONZALES prays for judgment against Defendants, and each of them, as follows:

A. For general, compensatory, and economic damages;

B. For medical expenses past and future incurred as a result of the incident described herein;

C. For emotional distress and loss of enjoyment of life;

D. For punitive or exemplary damages against Defendants;

E. For all costs and attorneys' fees pursuant to 42 U.S.C. Section 1988 and otherwise permitted by law;

F. For pre- and post-judgment interest to the extent permitted by law;

G. All remedies associated with 42 U.S.C. §§ 1981 and 1983; and

H. For such other and further relief as the Court deems just and proper.

DATED this 23rd day of November, 2011.

By: _____
James Bunting
Attorney for Plaintiff
For the Firm